01
02
03
04
05
06
07

08        UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
09                    AT SEATTLE

10  VERNA MCDONOUGH,              )   Case No. C06-1571-RSL-JPD
                                  )
11          Plaintiff,             )
                                  )
12      v.                         )
                                  )   REPORT AND RECOMMENDATION
13  MICHAEL J. ASTRUE, Commissioner, )
    Social Security Administration, )
14                                )
            Defendant.             )
15  _____)

16          Plaintiff Verna McDonough appeals the final decision of the Commissioner of the

17  Social Security Administration ("Commissioner"), which denied plaintiff's application for a

18  period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social

19  Security Act, 42 U.S.C. § 401 *et seq.* ("the Act"), after a hearing before an Administrative

20  Law Judge ("ALJ"). For the reasons set forth below, the Court recommends that the

21  Commissioner's decision be REVERSED and REMANDED for further proceedings not

22  inconsistent with the Court's instructions.

23                    I.  FACTS AND PROCEDURAL HISTORY

24          Plaintiff is a fifty-six year-old woman with a high school education. Administrative

25  Record ("AR") at 55, 81. Plaintiff has previously worked as a school bus driver, receptionist,

26  pizza delivery driver, cashier, and was self-employed to use her dog to clear geese from private

REPORT AND RECOMMENDATION
PAGE – 1

property. AR at 66. Plaintiff was last gainfully employed in 2002. AR at 75.

On April 23, 2003, plaintiff applied for SSI benefits based on physical impairments, alleging an onset date of March 1, 2002. AR at 75. Plaintiff asserts that muscle spasms and chronic pain associated with fibromyalgia have kept her from maintaining employment of any kind. AR at 75.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 26, 30. On April 1, 2005, a disability hearing was held before the ALJ, who eventually concluded that plaintiff was not disabled and denied benefits based on his finding that plaintiff's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity ("RFC"). AR at 23. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 5-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 1, 2006, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, settling conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*

*v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to meticulously examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence on record is susceptible to more than one rational interpretation, it is the Commissioner's conclusions that must be upheld. *Id*.

## IV.  EVALUATING DISABILITY

As the claimant, Ms. McDonough bears the burden of proving that she is disabled within the meaning of the Social Security Act ("the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled or not disabled at any step in the sequence, the inquiry ends without need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE – 3

or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. § 404.1520(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether that impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. § 404.1520(d). A claimant whose impairment meets or equals a listing for the twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. *Id.* If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f). If the Commissioner finds the claimant is unable to perform other work, the claimant is disabled and benefits may be awarded.

## V. DECISION BELOW

On June 2, 2005, the ALJ issued a decision denying plaintiff's request for a period of disability and DIB, which found:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 261(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease and fibromyalgia, are considered "severe" based on the requirements in . . . [Regulation] 20 CFR § 404.1520(c).

REPORT AND RECOMMENDATION
PAGE – 4

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/[or] walk for 2 hours in an 8-hour day and sit for 6 hours in an 8-hour day. Additionally, the claimant is limited to occasional climbing ramps and stairs, stooping, crouching and crawling but is precluded from climbing ladders, ropes and scaffolds. She also has limited ability to reach overhead with both upper extremities. Further, she should avoid concentrated exposures to hazards such as machinery and heights.

7. The claimant's past relevant work as a receptionist did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable degenerative disc disease and fibromyalgia do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

AR at 22-23.

## VI. ISSUES ON APPEAL

There are three primary allegations of error:

1. Did the ALJ Err in Assessing the Plaintiff's Credibility and Testimony Regarding Her Pain Level?

2. Did the ALJ Fail to Provide Legally Sufficient Reasons for Rejecting the Medical Opinion Evidence of Treating Physician Dr. Ross?

3. Did the ALJ Err by According Little Weight to the Testimony of Claimant's Son Regarding Claimant's Abilities?

## VII.   DISCUSSION

A. <u>The ALJ Erred in Assessing the Plaintiff's Credibility and Testimony Regarding Her Pain Level</u>

Credibility determinations are particularly the province of the ALJ. *Andrews*, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective testimony, he must

REPORT AND RECOMMENDATION
PAGE – 5

01 articulate specific and adequate reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972

02 (9th Cir. 2006). The determination of whether to accept a claimant's subjective symptom

03 testimony requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at

04 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically-determinable

05 impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R.

06 § 404.1529(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical

07 evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to

08 the severity of symptoms solely because they are unsupported by objective medical evidence.

09 *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence

10 that the claimant is malingering, the ALJ must provide "clear and

11 convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*

12 *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

13 When evaluating a claimant's credibility, the ALJ "must specifically identify what

14 testimony is credible and what testimony undermines the claimant's complaints." *Greger*, 464

15 F.3d at 972 (internal quotation omitted). General findings are insufficient. *Reddick*, 157 F.3d

16 at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including the

17 claimant's reputation for truthfulness, inconsistencies in her testimony or between her

18 testimony and conduct, her daily activities, work record, and testimony from physicians and

19 third parties concerning the nature, severity, and effect of the symptoms of which the claimant

20 complains. *Smolen*, 80 F.3d at 1284.

21 The ALJ held that plaintiff's "statements concerning her impairment and its impact on

22 her ability to work are not entirely credible." AR at 20. This was based on the ALJ's

23 conclusion that plaintiff had "provided inconsistent information regarding the degree and

24 severity of her pain symptomatology." AR at 20. The inconsistences cited by the ALJ include

25 plaintiff's testimony before the ALJ that plaintiff had pain twenty-four hours every day,

26 contrasted with plaintiff's statements to her treating doctor regarding fluctuation in her pain

REPORT AND RECOMMENDATION
PAGE – 6

levels from visit to visit. AR at 20. The ALJ also noted that during some visits, plaintiff's treating doctor noted that plaintiff "look[ed] well" or "look[ed] comfortable" and that "at times [plaintiff] appeared in no apparent distress." AR at 20. Further, the ALJ found that "objective medical evidence does not support the claimant['s] statements of whole body pain."

The ALJ erred by finding the claimant not credible on the basis of her pain allegations. Relying on the absence of objective medical testimony to discount plaintiff's statements regarding her subjective pain level was inappropriate. Such an analysis is tantamount to requiring objective evidence of the *degree* of pain, which is not required by law. As stated above, once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of her symptoms solely because they are unsupported by objective medical evidence. *Bunnell*, 947 F.2d at 343. However, that appears to be precisely what occurred in this case. Dr. Ross, plaintiff's treating physician, concluded that the plaintiff was totally disabled. The objective medical evidence evaluated by Dr. Ross supports plaintiff's testimony regarding her pain. Because there are no allegations that plaintiff was malingering, the ALJ was required to provide clear and convincing reasons for rejecting her testimony. *Reddick*, 157 F.3d at 722. The ALJ failed to do so. This error must be corrected on remand.

The ALJ also attempted to support his adverse credibility determination by stating that "limited daily activities cannot be verified with any reasonable degree of certainty," and that plaintiff's "statements of . . . preparing and cooking meals, vacuuming, sweeping the floor, dusting, washing dishes, making the beds, driving, reading and watching television," were inconsistent with the degree of incapacity that plaintiff alleged. The ALJ's characterization of plaintiff's daily activities are not consistent with plaintiff's own statements that she was able to engage in ten minutes of vacuuming, three minutes of sweeping, two minutes of dusting, five minutes of bed making, and ten minutes of doing dishes, and was unable to do any of those

chores on bad days. AR at 88. The ALJ also appears to reject the testimony of plaintiff's son as a means to verify plaintiff's daily activities, see AR at 21, despite the fact that plaintiff lives with her son and he sees her every day. AR at 345. This issue is discussed in greater detail below.

Even if plaintiff is able to engage in some basic household activities, that does not mean that she is capable of continuously and consistently performing in a structured work environment. *See* 20 C.F.R. § 404, Subpt. P., App. 2, § 200.00(c) (defining RFC as "the maximum degree to which the individual retains the capacity for *sustained* [work].") (emphasis added); *Lester*, 81 F.3d at 833 ("Occasional symptom-free periods are not inconsistent with disability."). To this end, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment." *Smolen*, 80 F.3d at 1284. Rather, an ALJ may reject a claimant's symptom testimony "if the claimant is able to spend a *substantial* part of her day performing household chores or other activities that are transferable to a work setting." *Id.* (emphasis added). On remand, the ALJ must reevaluate plaintiff's testimony, and provide clear and convincing reasons for rejecting it, should such a conclusion be warranted. In this process, the ALJ should carefully determine which of plaintiff's substantial daily activities, if any, are transferable to a work setting. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

  B. <u>The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting the Medical Opinion Evidence of Treating Physician Dr. Ross</u>

Relevant medical evaluations of the following physicians were before the ALJ at the time of plaintiff's April 1, 2005, disability hearing: treating physician Dr. Martin P. Ross; (AR at 130-181) treating physician Dr. Kenneth Leung (AR at 109-114); and two non-examining state agency medical consultants. AR at 125, 213.

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751.

"Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).

However, under certain circumstances, an examining physician's opinion can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is contradicted. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

In this case, plaintiff's treating physician, Dr. Ross, concluded that plaintiff was totally disabled due to the pain accompanying her fibromyalgia. AR at 132. Dr. Ross had been involved in plaintiff's treatment for the three to four years prior to plaintiff's hearing. AR at 330. The ALJ held that although Dr. Ross's opinion regarding plaintiff's diagnosis of fibromyalgia was credible, his opinion regarding her disability was not. AR at 20, 21. Instead, the ALJ accepted the opinions of the state medical consultants regarding plaintiff's disability. AR at 20, 21. In support of his holding, the ALJ stated, "it is not clear that [Dr. Ross] was familiar with the definition of 'disability' contained in the Social Security Act Regulations." AR at 21. As a result, the ALJ chose to rely on the opinions of the state medical consultants, who were not treating physicians. AR at 21.

The plaintiff argues that the ALJ rejected the uncontroverted opinion of Dr. Ross without a "clear and convincing" or "specific and legitimate" basis. Dkt. No. 12 at 9-11. The Commissioner disagrees, insisting that Dr. Ross's opinions are controverted by the opinion of

REPORT AND RECOMMENDATION
PAGE – 9

Dr. Leung as to the extent of plaintiff's impairment, and argues that the ALJ's reasons for rejecting his opinions were specifically outlined and sufficiently legitimate. Dkt. No. 13 at 6.

Because this case is being remanded for the reasons detailed above, the Court eschews a detailed analysis of the ALJ's justification for discounting the testimony of Dr. Ross. In light of the Court's finding that the ALJ failed to properly assess the testimony of the plaintiff as to her own symptoms, the ALJs should also reevaluate Dr. Ross's opinions on remand.

### C. The ALJ Should Reevaluate the Weight Given to the Testimony of Claimant's Son on Remand

In order to determine whether a claimant has an impairment, an ALJ may consider lay witness sources, such as testimony from family members. 20 C.F.R. § 404.1513(d)(4). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If lay witness testimony is diagnostic in nature and conflicts with medical evidence, the ALJ may discount such testimony. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 1987).

The ALJ discounted the testimony of plaintiff's son based on the fact that he may have been in a position to benefit from his mother's award of benefits. AR at 21. However, "[i]f the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, *or family*) would ever be found credible." *Ratto v. Secretary, Dept. of Health and Human Servs.*, 839 F. Supp. 1415, 1429 (D. Or. 1993) (emphasis added). Here, the ALJ discounted the testimony of plaintiff's son based on the close nature of his relationship to the plaintiff. AR at 21. Again, under this logic, few third-party witnesses could provide probative testimony. Although a close personal relationship may be a germane reason to discount lay testimony, see *Greger*, 464 F.3d at 972, the ALJ should balance this consideration with the fact that "[a]n eye witness can often tell whether someone is suffering or merely malingering . . . this is particularly true of witnesses who view the claimant on a daily basis." *Dodrill*, 12 F.3d at 919. On remand, the ALJ should reevaluate the lay testimony of the plaintiff's son. He has daily contact with his mother, and is

REPORT AND RECOMMENDATION
PAGE – 10

in a position to convey a complete picture of his mother's ability to function and care for herself at home.

## VIII.   CONCLUSION

Because the ALJ erred by improperly discrediting plaintiff's subjective symptom complaints, by improperly rejecting the opinion of Dr. Ross, and by failing to provide legally sufficient reasons for discounting the testimony of plaintiff's son, this case should be REVERSED and REMANDED for further proceedings not inconsistent with this Report and Recommendation.  In particular, the ALJ should reevaluate plaintiff's subjective pain testimony, reassess and give proper weight to the testimony of plaintiff's son and to that of Dr. Ross, reevaluate plaintiff's RFC, and reassess plaintiff's credibility.  To the extent that the plaintiff's impairments and/or limitations are modified on remand, the ALJ should call a vocational expert at step five, and propound a hypothetical to the VE that incorporates the medical evidence on record.  Specifically, the ALJ should ask the VE to provide testimony concerning the full vocational impact of all plaintiff's physical impairments, and to clarify the effect of the assessed limitations on plaintiff's occupational base.  A proposed order accompanies this Report and Recommendation.

DATED this 30th day of July, 2007.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge